PHILLIPS *and* MARTIN *against* THE GOVERNOR, FOR THE USE, &c.

ERROR *to Crawford Circuit Court.*

Upon administrator's bonds, made payable to "the Governor and his successors in office," the right of action is not restricted to the *immediate* successors of the Governor in whose name such a bond may have been taken.

Any remote successor of such Governor may sue on such bond, and state himself to be the successor of such Governor to whom the bond was executed, without noticing the intermediate Governors.

And in such case the declaration may state the bond to have been made " to the plaintiff."

Under 8th and 9th WM. III, substantially re-enacted in the Territory of Arkansas in 1834, the plaintiff, in actions on penal bonds, was compelled to assign or suggest breaches; and unless the condition and breach both appeared on the record, the proceedings were erroneous.

In a bond executed to the Governor, and his successors, by an administrator, &c., the Governor holds the legal interest as a naked trust, and no injury appears to have been sustained by the *cestui*, for whose use the suit is brought, until a special breach or breaches are assigned.

In such suit, therefore, each breach must specially state the facts on which the right of action of those for whose use the suit is brought depends; with as much certainty and precision as is required in the counts of a declaration.

If the plaintiff fails to suggest or assign the proper breaches no cause of action is shown to have accrued.

A breach is well assigned, if in the words of the contract, either negatively or affirmatively, or in words co-extensive with its legal import or effect.

And where, on such a bond, the breach amounts merely to a general statement that the administrator has done nothing which he was bound to do, it is fatally defective.

If a suit on such bond is brought for the use of heirs, they must show by positive and specific averments their interest in the estate; and how, and in what manner they have been deprived of their interest in the estate by the devastavit of the administrator.

Under the Revised Statutes, in suits on penal bonds, the jury must be sworn to inquire into the truth of the breaches, as well as to assess the damages: and the judgment must be entered for the penalty of the bond, with costs; and the plaintiff have execution for the damages.

This was an action of debt, on an administrator's bond, commenced by " James S. Conway, Governor of the State of Arkansas, and successor of John Pope, Governor of the late Territory of Arkansas, for the use and benefit of Samuel Dennis" and others, as heirs of David Trimble, deceased, against the plaintiffs in error, together with Greenup D. Womsley, on the bond of Womsley as administrator of the estate of David Trimble, dec'd, in which bond the plaintiffs in error were securities. The declaration demands $8,000, the penalty of the bond, and states that the defendants on the 22nd day of August, in the year eighteen hundred and thirty-four, at Crawford county,

made their writing obligatory, by which they, together with one Thomas Phillips, since then deceased, acknowledged themselves held and bound *unto the said plaintiff* in the sum of eight thousand dollars: the condition of the bond is then recited, in the common form of such bonds: it is then alleged that the persons for whose use the suit was brought, are the sole heirs at law and legal representatives of said David Trimble, dec'd, and as such are entitled to have and receive the whole amount of said estate, after a fair administration thereof, the amount of ten thousand dollars. Then follows the breach in these words:

"And the said plaintiff avers that at the time of the death of the said David Trimble, deceased, he died possessed of a large estate of goods, chattels, slaves, notes, accounts, dues and effects, to wit: the amount of twenty thousand dollars, which then and there came to the hands, possession and knowledge of the said Greenup D. Womsley, administrator as aforesaid, to be administered upon by him according to law. Yet the said Greenup D. Womsley, administrator as aforesaid, hath wholly failed and refused to make, or cause to be made, a true and perfect inventory of said estate according to law, which did come to his hands, possession, or knowledge, and to the hands and possession of any person for him, nor did he make due return and exhibit in the office of the Clerk of the county of Crawford according to law, of all and singular the goods and chattels, rights, and credits, of the deceased, which did come to the hands, possession, and knowledge of him, said administrator, nor did he well and truly administer the same according to law, and pay the debts of said deceased as far as the assets did extend, nor did he make such distribution and disposition of said estate as the law directs, in this that there were debts to the amount of $1,000, and distributive shares due said Samuel, &c., who have sued to the amount of $10,000, which were then and there due, which he failed to pay and satisfy according to law and his duty as administrator, to wit: at the time when, &c., aforesaid, in the county aforesaid. And further, that the said administrator did not make, or cause to be made, a true and just account of his said administration, nor did he make due and proper settlement thereof from time to time, according to law, nor the sentence or decree of any

court whatever; nor hath he well and truly kept and performed his said condition in any thing whatever, but has wholly failed in every respect to keep the same. By reason of which said several breaches the said action hath accrued to the said plaintiff to demand and have of and from the said defendants the said sum of $8,000, the penalty above demanded, yet the said defendants, although often requested so to do, have not as yet paid the said sum of eight thousand dollars above demanded, or any part thereof to the said plaintiff, or to any other person or persons whatsoever. Nor have they, or either of them, paid the distributive shares aforesaid, due and payable to the said Samuel, Christina, Elvira, Marina, Romulus and Alfred, or either of them, or to any person for them. But hath hitherto wholly neglected and refused, and still doth neglect and refuse so to do. To the damage of the said plaintiff twenty thousand dollars, and therefore he sues," &c.

To this declaration, on the 30th day of March, A. D. 1839, the plaintiffs filed their general demurrer, which was overruled, and they made no further answer: whereupon it was "considered by the court that the plaintiffs ought to have and recover of and from the defendants all of their damages by them sustained by reason *of the breach of covenant* aforesaid, but because the court is not sufficiently advised what damage the said plaintiffs have sustained, it is ordered that a writ of inquiry issue," &c.—"to inquire into and assess the damages sustained by said plaintiffs by reason of the breach of covenant as aforesaid."

At September term, 1839, a jury was returned who were sworn to "well and truly try and damages assess, and true verdict render according to evidence;" and returned their verdict that they assessed the plaintiff's damages by reason of the breaches of covenant in the plaintiff's declaration set forth, to the sum of $3,217 15 cts.; for which sum and costs the court rendered judgment in favor of the plaintiff.

PIKE, for plaintiff in error:

It is contended by the plaintiff in error: first, that the court below erred in overruling their demurrer to the declaration: and second, that the proceedings subsequent thereto are wholly irregular and erroneous.

This court, in the case of *Lyon vs. Evans*, 1 *Ark.* 386, has laid down the law as to assigning breaches in such an action as the present most clearly and explicitly, and in conformity with previous decisions upon the subject. The court says that the causes of action set forth in the breaches assigned, are to be considered as the gravamen, or real foundation of the recovery—that the persons for whose use, &c., are the *real plaintiffs* in the case, and that their interest in the performance of the condition, and the injury done them by a breach of it, do not appear until some special breach is assigned, and their interest and damage specially shown—so that, of necessity, *every* breach must state the facts on which their right of action depends, with as much precision and certainty as is required in the several counts of a declaration. And the court declares that every breach must have all the essential requisites of so many different counts in a declaration.

If the law, thus expounded, needed to be sustained by authority elsewhere, it may be readily found. Thus in the *People vs. Russell and Wood*, 4 *Wend.* 570, it was declared that where a breach gives no *data* from which damages can be assessed, it is not sufficient. So in the *People vs. Brush*, 6 *Wend.* 454, it is also said that a breach is well assigned, if it be in the words of the contract, either negatively or affirmatively, or in words co-extensive with the import and effect of it; that this is not only the general, but perhaps the universal rule, where the contract or condition of the bond provides for a single act to be done; but where it requires many things, the omission of any one of which would constitute a breach, a particular breach should be specified in the assignment. The object of an assignment of a breach, it is said, is to apprise the party of what he is called on to answer.

Testing the present declaration by these rules, it is undeniably bad. It is utterly shapeless and without form or substance. If considered as containing but one breach it is bad for duplicity; and certainly there is no attempt according to any of the known rules or forms of pleading to assign several breaches. See for the forms, 1 *Chit. Prac.* 424, 425; 3 *Chitty Plead.* 1179, 1180; *Story Plead.* 325. In fact the declaration seems intended to cover the whole condition, and the breach is precisely the same as though it had alleged that the said

Womsley had done nothing which he was by the condition required to do; which would of course be bad.   6 *Wend.* 454; 7 *Price*, 550.

At common law the plaintiff could assign but one breach; and Chitty lays it down that the St. 3 and 9 Wm. 3 *c.* 11 *s.* 8, which is nearly the same as our statute, and authorizes several breaches to be assigned, requires them to be assigned as at common law, not merely in the words of the condition, but specially stating the facts. 1 *Ch. Pl.* 618. And the right to assign several breaches, does not allow duplicity any more than does the right to plead several pleas.   This declaration must be considered as containing but one breach, because there are no forms observed which separate its incongruous materials into different breaches.   The meaning of duplicity, as to a declaration, is, that it must not, in support of a single demand, allege several distinct matters, by any one of which that demand is sufficiently supported; and as to subsequent pleadings, that none of them is to contain several distinct answers to that which preceded it.   The present attempt at an assignment of breaches would be bad, either in a declaration or replication.   *Stephen* 251.

On demurrer, if there be one good breach out of several, the demurrer is overruled.   This imposes the necessity, where there are several breaches, of several demurrers.   How could several demurrers be framed to this declaration?   The wit of man could not distinguish the dividing line between the breaches, if there are several.

And it is undoubtedly true that if there be some good and some bad breaches, and on the trial damages are assessed generally, it is bad.   *People vs. Brush,* 6 *Wendell,* 458.   And thus even if one breach, or part of a breach be good, still the judgment is erroneous, because it is general, on the whole declaration.   *Haggin vs. Williamson,* 5 *Mon.* 10.

This is a suit for the use of heirs.   Of course they are only entitled to maintain it in one event, and in order to do so, must show in the declaration by sufficient and positive averments their interest in the estate, and how they have been deprived of that interest.   The breach in this case does not aim at this, but rather at showing that the administrator had done no act whatever, and the failure of the adminis-

Phillips and Martin *against* the Governor, for the use, &c.

trator to pay the debts of the estate is alleged in the same breath with his failure to pay their distributive shares, as a cause of action to the heirs.   In truth it may be seriously questioned whether the allegation that the distributive shares were due and owing, does not show a several interest in each plaintiff, which would preclude a joint suit.

The declaration is so completely insufficient that it is only necessary to point to a form book, and the first principles of pleading, to show that no judgment on it can be sustained.

*Second:* The subsequent proceedings are erroneous.   The jury *was not summoned or sworn to inquire into the truth of the breaches,* but merely *to assess the damages sustained by reason of the breach of* covenant, and have returned no verdict as to the truth of the breaches, as required by our statute; nor is the judgment entered for the penalty at all, but merely for the damages assessed.   *Rev. St.* 609.

But it is manifestly unnecessary in this case to do more than advert to these errors.   The court will take notice when the State Government was formed, and when the Governor took his seat, as in England they notice when the King comes to the throne.   This suit is brought in the name of Governor Conway, successor to Pope, who was successor to Fulton, Governor.   It is brought on a bond executed in 1834, and *which is alleged to have been made to the plaintiff.*   The court will notice that the averment is of an impossibilty, and this point of it itself is sufficient to decide the case.

WALKER, *Contra:*

LACY, *Judge*, delivered the opinion of the court:

It is contended on behalf of the plaintiffs in error that the court below erred in overruling the demurrer to the declaration, and that all the subsequent proceedings are consequently irregular and illegal.

Before we proceed to determine this point, it may be well to notice, and dispose of another objection urged by the plaintiff in error.   It is said the action cannot be maintained because the suit is brought in the name of James S. Conway, Governor of the State of Arkansas, as the successor of John Pope, late Governor of the Territory as afore-

said, when in truth and fact the plaintiff was the successor of William
S. Fulton, Governor of the Territory as aforesaid; that the, &c.,
the bond, upon which the suit is instituted, was executed in 1834,
and the allegation in the declaration is, that it was made to the
plaintiff in the action, and therefore this court is bound judicially to
take notice when the State Government was formed, and when the
present acting Governor entered upon his official duties; and that this
being the case, it follows that the present plaintiff was the successor
of Governor Fulton, and not of Governor Pope. We are unable to
perceive the force or reasons of this objection. The statute author-
izing the execution of administrator's bonds makes them payable " to
the Governor and his successors in office." This is the express lan-
guage of the act. The object and design of the statute was to vest
in the Governor and his successors the right of action whenever a
breach occurred on the condition of the bond. It does not confine
or restrict this right to the Governor and his immediate successor in
office, but it gives it to him and his successors, thereby clearly author-
izing the suit to be brought in the name of any person who may be
legally chosen to fill the office. The office itself, in legal contempla-
tion, is always *in esse,* and it matters not to whom the bond was exe-
cuted; if there is a breach upon it, the right of action accrues to him
who is the acting Executive at the time of the institution of the suit,
and of course such person is the legal successor of him to whom the
bond was executed. This being the case, the suit is properly brought
in the name of the present plaintiff as the successor of John Pope, late
Governor of the Terrtory of Arkansas.

This suit is prosecuted in the name of the Governor for the use and
benefit of the heirs and legal representatives of David Trimble, de-
ceased, against the administrator of said estate, and the securities up-
on their official bond, under the provisions of an act of the General
Assembly of the Territory of Arkansas, passed in 1831, which de-
clares that " in all actions upon any bond or penal sum for non-per-
formance of covenants or agreements in any indenture, deed, or writ-
ing contained, the plaintiff or plaintiffs may assign as many breaches
as he or they shall think fit." This act is substantially the same in

most of its provisions, as the act of 8th and 9th Wm. III, and the decisions upon that statute may be regarded as strictly applicable to the one now under consideration. Under the statute of William it has been held that the plaintiff is compelled to assign or suggest breaches, and if he fails to do so, he cannot recover. Unless the condition and the breach appear upon the record the proceedings will be erroneous. 5 *T. R.* 633, 538; 2 *Wilson*, 337. And such we apprehend is the legal and legitimate operation of the act of 1831, and so it has been determined in the case of *Lyons vs. Evans, and others.* 1 *Ark.* 367.

The bond upon which the suit is instituted is made payable to the Governor and his successors in office, and the jury upon the trial are required to assess damages for each of the breaches that the plaintiff alleges, and that are proved to be broken. The Governor holds the legal interest in the bond in his official character, as a naked trustee for the benefit of those for whom the suit is instituted, and the injuries resulting from the non performance of the condition of the bond, do not appear until some special breach or breaches are suggested and assigned, and the damages specially shown or proven. Therefore, every breach must state the facts specially upon which the plaintiff's right of action depends, and must allege them with as much certainty and precision as are required in the count or counts of a declaration. The breaches appear in every point of view to answer the same purposes as counts in a declaration where the form of proceeding is different, and therefore if the plaintiff fails to suggest or assign proper breaches upon the record, no cause of action accrues. This is the undoubted rule upon the subject, for the breaches assigned are to be considered as the gravamen or real foundation of the recovery; consequently the persons for whose benefit the suit is brought are the real plaintiffs, and of course they must show a good cause of action, or upon general demurrer the declaration will be held fatal. *The People vs. Russell and Wood,* 4 *Wend.* 570; *People vs. Brush,* 6 *Wend.* 554. A breach may be considered well assigned if it be in the words of the contract, either negatively or affirmatively, or in words co-extensive with its legal import or effect. The object of the assignment of a breach, is to apprise the opposite party of what he is called upon to answer. By applying the rules above stated to the declaration now

49

under consideration, we will be enabled to perceive whether or not the breaches are properly assigned.

In the present instance the declaration seems designed to cover the whole condition of the bond, and it contains but a single breach, which amounts to nothing more than this, that the said administrator had done nothing which by law he was bound to do. Such a breach is fatally defective, for it contains neither substance nor form, and it expressly contradicts all the known rules and precedents of pleading. 1 *Chit. Pl.* 424, 425; 3 *Chit. Pl.* 1179, 1180; *Story Pl.* 325. There is certainly but one breach contained in the declaration, for it possesses no separate or component parts assigning different breaches. It simply sets out the condition of the bond, and then negatives them in general terms, without alleging any specific facts upon which the defendants' liability depends. This is a suit for the use of heirs, and of course they are only entitled to maintain the action in the event that they have been damnified. In order to do this, they are bound to show by positive and specific averments their interest in the estate, and how and in what manner they have been deprived of that interest by the devastavit of the administrator. The declaration cannot be regarded as containing any one substantial breach. It seems to rely solely upon the fact that the administrator had not performed his duty according to law, and it lays the breach to pay the debts of the deceased in the same clause with that to pay the distributive shares of the heirs. In all the breaches it attempts to set forth there is no specific cause of action alleged with reasonable certainty or precision, and of course it is fatally defective upon demurrer.

Again the finding of the jury is not in conformity with the statute regulating the practice in such case, and of course the subsequent proceedings are erroneous. The act in relation to judgments obtained upon demurrer, or by confession, or default, upon penal bonds, requires that " the court shall make an order therein that the truth of the breaches assigned be inquired into, and the damages sustained thereby assessed. And the judgment in such action shall be entered for the penalty of the bond, together with costs of suit," and that the plaintiff have execution for the damages so assessed. *Rev. Stat.* 669, *sec.* 7 and 8. Neither of these requisites is contained in the order

or judgment of the court. The record merely states that " the jury was sworn well and truly to try, and damages assess, and a true verdict render according to evidence," and they assessed the damages sustained by reason of the breaches of covenant for a given sum. There was no verdict as to the truth of the breaches, nor judgment for the penalty of the bond as the statute requires. The judgment of the Circuit Court must therefore be reversed.